UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID C. PATKINS,

          Plaintiff,

    v.

J. FERGUSON,

          Defendant.

Case No. 18-cv-05139-EMC

**ORDER OF SERVICE**

Docket No. 1

## I.      INTRODUCTION

David C. Patkins, an inmate at the Correctional Training Facility in Soledad, California, filed a *pro se* civil rights complaint seeking relief under 42 U.S.C. § 1983. The complaint is now before the Court for review under 28 U.S.C. § 1915A.

## II.      BACKGROUND

In his complaint for damages, Mr. Patkins alleges that correctional supervising cook J. Ferguson retaliated against him because of his exercise of his First Amendment rights and violated Mr. Patkins' right to due process. The complaint alleges the following:

Mr. Patkins worked as a morning cook at the prison starting in April 2014. Mr. Ferguson was employed as a correctional supervising cook at the prison, and began working in the north culinary area in October 2017.

On October 10, 2017, Mr. Patkins and another inmate were standing in front of Mr. Ferguson's desk talking when Mr. Ferguson said, "'I want to watch you to [sic] kiss.'" Docket No. 1 at 9. Mr. Patkins said nothing and left the office.

On October 13, 2017, which was Mr. Patkins' next work day, Mr. Ferguson began harassing him by, e.g., hovering around Mr. Patkins, searching his area and personal belongings,

and looking at Mr. Patkins while he used the toilet.  Mr. Patkins later did file inmate appeals.

On October 14, 2017, Mr. Ferguson continued to harass Mr. Patkins, causing the latter to say "'please stop harassing me!  Please stop harassing me or I'm going to file a complaint.'"  *Id.* at 11.  Mr. Ferguson then got flustered and told Mr. Patkins and would not give him back his ID.

Over the ensuing weeks, Mr. Ferguson continued to harass Mr. Patkins in the ways described in the complaint.  The harassment included the following:  Mr. Ferguson issued a false rule violation report on October 14 for damaging, destroying or defacing state property.  Mr. Ferguson put Mr. Patkins on the worst or no job assignments.  Mr. Ferguson impeded Mr. Patkins' ability to do his job functions.  Mr. Ferguson improperly searched Mr. Patkins' pocket after calling him a thief.  Mr. Ferguson wrote a rule violation report on November 10, 2017 that falsely accused Mr. Patkins of stealing eggs.  Mr. Ferguson gave Mr. Patkins a negative evaluation and caused him to be removed permanently from his culinary job assignment in February 2018.

### III.        DISCUSSION

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  *See* 28 U.S.C. § 1915A(a).  In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief.  *See id.* at § 1915A(b). *Pro se* pleadings must be liberally construed.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements:  (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Retaliation:  An inmate has a First Amendment right to file grievances against prison officials without being subjected to retaliation in response thereto.  *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action

2

against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

Liberally construed, the *pro se* complaint states a cognizable claim against Mr. Ferguson for retaliation based on the allegedly numerous adverse actions he took against Mr. Patkins in response to both his statement of intent to file an inmate appeal and the inmate appeals that he did file.

Due Process: The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution protects individuals against governmental deprivations of life, liberty or property without due process of law. Interests that are procedurally protected by the Due Process Clause may arise from two sources: the Due Process Clause itself and laws of the states. *See Meachum v. Fano*, 427 U.S. 215, 223-27 (1976). In the prison context, these interests are generally ones pertaining to liberty. Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citing *Vitek v. Jones*, 445 U.S. 480, 493 (1980) (transfer to mental hospital), and *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (involuntary administration of psychotropic drugs)). Deprivations that are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that the liberty in question is one of "real substance." *See Sandin*, 515 U.S. at 477-87. An interest of "real substance" will generally be limited to freedom from restraint that imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "will inevitably affect the duration of [a] sentence." *Id.* at 484, 487.

False charges alone are not actionable under § 1983 because falsely accusing a person of misconduct does not violate a right secured by the Constitution or laws of the United States. For a false accusation to be potentially actionable, the false charge must implicate some constitutional right, such as the Fourteenth Amendment's right to due process. An allegation of a false charge

that results in discipline that is not severe enough to amount to a deprivation of a protected liberty interest under *Sandin* – that is, by imposing an atypical and significant hardship or by inevitably affecting the duration of confinement – does not state a claim under § 1983. *See Smith v. Mensinger*, 293 F.3d 641, 653-54 (3d Cir. 2002) (no § 1983 claim was stated for allegedly false charges because the disciplinary confinement imposed was too short to amount to an atypical and significant hardship under *Sandin*). Even if the false charge does result in discipline that amounts to the deprivation of a protected liberty interest under *Sandin*, a § 1983 claim is not stated if the inmate is afforded the procedural protections required by federal law at the disciplinary hearing. *See Smith*, 293 F.3d at 654; *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986).

Mr. Patkins appears to allege due process claims based on the October 14th rule violation report, the November 10th rule violation report, and his removal from the culinary job assignment. The false statements allegedly made by Mr. Ferguson on these occasions are not actionable under § 1983 because they did not implicate a constitutionally protected right.

The October 14th rule violation report led to "discipline" that consisted of only counselling. *See* Docket No. 1-1 at 60 ("counseling only" rule violate report). Simply counselling an inmate about his behavior is too trivial a matter to be considered the imposition of an "atypical and significant hardship" that *Sandin* requires for a right to due process to exist. Without the existence of a right to due process, Mr. Ferguson's allegedly false statements that resulted in counseling for Mr. Patkins did not result in a due process violation.

The November 10th rule violation report resulted in discipline that consisted of Mr. Patkins being put in privilege group "C" for thirty days. Docket No. 1-1 at 68-76. Privilege group "C" status meant that, for thirty days, Mr. Patkins could have no visits, no care packages, no law library access, no phone, and restricted access to the yard. Docket No. 1 at 19. This temporary loss of privileges did not amount to the atypical and significant hardship that *Sandin* requires for a right to due process to exist. *See Sandin*, 515 U.S. at 487 (imposition of 30-day term in disciplinary segregation did not amount to an atypical and significant hardship); *Myron v. Terhune*, 476 F.3d 716, 718-19 (9th Cir. 2007) (classification for California Level IV prison rather

than Level III prison not shown to be an atypical and significant hardship; refusal to allow prisoner to publish and distribute an inmate publication not an atypical and significant deprivation)*; Mujahid v. Meyer*, 59 F.3d 931, 932 (9th Cir. 1995) (under *Sandin*, no liberty interest when inmate placed in disciplinary segregation for 14 days).  The possibility that the presence of one or both of these rule violation reports in Mr. Patkins' prison file might someday negatively impact his parole prospects does not give rise to a right to due process because "[t]he chance that a finding of misconduct will alter the balance [of the parole suitability determination] is simply too attenuated to invoke the procedural guarantees of the Due Process Clause."  *Sandin*, 515 U.S. at 487.  Without the existence of a right to due process, Mr. Ferguson's allegedly false statements that led to the 30 days on privilege group "C" did not result in a due process violation.

The allegedly false statements made by Mr. Ferguson that led to Mr. Patkins' removal from his culinary job also do not give rise to a due process claim.  "[T]he Due Process Clause of the Fourteenth Amendment does not create a property or liberty interest in prison employment."  *Walker v. Gomez*, 370 F.3d 969, 973 (9th Cir. 2004) (quotations omitted); *see also Davis v. Small*, 595 Fed. Appx. 689, 691 (9th Cir. 2014) ("The Due Process Clause itself does not give rise to a protected liberty interest in a paying prison job").  Without the existence of a right to due process, Mr. Ferguson's allegedly false statements that led to Mr. Patkins' removal from his job did not result in a due process violation.

Although the allegations about the false statements in the rule violation reports and the false statements that led to the loss of the prison job do not state a claim for a due process violation, they nonetheless remain relevant to the retaliation claim.

### IV.    CONCLUSION

1.    The complaint states a cognizable § 1983 claim against the only defendant, correctional supervising cook J. Ferguson, for retaliation.  The due process claim is dismissed.

2.    The Clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, a copy of the complaint and a copy of all the documents in the case file upon J. Ferguson, a correctional supervising cook at the Correctional Training Facility in Soledad.

3.      In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

a.      No later than **March 1, 2019**, defendant must file and serve a motion for summary judgment or other dispositive motion.  If defendant is of the opinion that this case cannot be resolved by summary judgment, defendant must so inform the court prior to the date the motion is due.  If defendant files a motion for summary judgment, defendant must provide to plaintiff a new *Rand* notice regarding summary judgment procedures at the time she files such a motion. *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012).

b.      Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the court and served upon defendants no later than **March 29, 2019**.  Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment.

c.      If defendant wishes to file a reply brief, the reply brief must be filed and served no later than **April 12, 2019**.

4.      Plaintiff is provided the following notices and warnings about the procedures for motions for summary judgment:

> The defendants may make a motion for summary judgment by which they seek to have your case dismissed.  A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. . . . Rule 56 tells you what you must do in order to oppose a motion for summary judgment.  Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case.  When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says.  Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial.  If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you.  If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998).

If a defendant files a motion for summary judgment for failure to exhaust administrative remedies,

he is seeking to have the case dismissed.  As with other defense summary judgment motions, if a motion for summary judgment for failure to exhaust administrative remedies is granted, the plaintiff's case will be dismissed and there will be no trial.

5.     All communications by Plaintiff with the Court must be served on a Defendant's counsel by mailing a true copy of the document to the Defendant's counsel.  The Court may disregard any document which a party files but fails to send a copy of to his opponent.  Until a Defendant's counsel has been designated, Plaintiff may mail a true copy of the document directly to the Defendant, but once a Defendant is represented by counsel, all documents must be mailed to counsel rather than directly to that Defendant.

6.     Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

7.     Plaintiff is responsible for prosecuting this case.  Plaintiff must promptly keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion.  Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).  Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

8.     Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to the Court for consideration in this case.

**IT IS SO ORDERED**.

Dated: December 19, 2018

_____
EDWARD M. CHEN
United States District Judge