UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID C. PATKINS,<br><br>    Plaintiff,<br><br>v.<br><br>J. FERGUSON,<br><br>    Defendant. | Case No. 18-cv-05139-EMC<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND SETTING BRIEFING SCHEDULE**<br><br>Docket No. 18 |

## I.     INTRODUCTION

In this *pro se* prisoner's civil rights action, David Patkins alleges a retaliation claim against J. Ferguson. Defendant Ferguson now moves for summary judgment on the ground that administrative remedies were not exhausted for some parts of Mr. Patkins' retaliation claim. Mr. Patkins opposes the motion. For the reasons discussed below, Defendant's motion for summary judgment will be granted in part and denied in part. The Court also will set a briefing schedule for any motion for summary judgment on the merits.

## II.     BACKGROUND

A.     The Alleged Retaliatory Conduct

Mr. Patkins alleges in his complaint that he worked as a morning cook. He contends that correctional supervising cook J. Ferguson retaliated against him (Patkins) because of his exercise of his First Amendment rights. The complaint alleges that, after some harassment by Mr. Ferguson, Mr. Patkins said to Mr. Ferguson on October 14, 2017: "'please stop harassing me! Please stop harassing me or I'm going to file a complaint.'" Docket No. 1 at 11. (Mr. Patkins also later filed inmate appeals.) The complaint further alleges that, after Mr. Patkins first threatened to

file a complaint, Mr. Ferguson retaliated in the following ways:

(1) On October 14, 2017, Mr. Ferguson refused to give Mr. Patkins his prison ID after telling Mr. Patkins to "leave culinary." *Id.* at 11.

(2) Also on October 14, Mr. Ferguson issued a false rules violation report for misuse of state property (viz., taking a large amount of plastic wrap). *Id.* at 12; Docket No. 1-1 at 60.

(3) Mr. Ferguson put Mr. Patkins on "the worst, or no job assignments." Docket No. 1 at 13, 20.

(4) On October 20, Mr. Ferguson blocked Mr. Patkins' access to do his job functions (e.g., stood in front of the mixer needed to prepare pancake batter). *Id.* at 13.

(5) Mr. Ferguson "involve[d] his superiors, e.g., SCC Hall and SCC McKinlay to planned, surprise ambushes of [Patkins'] work areas" to look for stolen items or rule violations. *Id.* at 13 (errors in source).

(6) On October 31, Mr. Ferguson called Mr. Patkins a thief and personally searched his back pocket but found nothing. *Id.* at 14.

(7) On November 10, Mr. Ferguson issued a false rule violation report against Mr. Patkins for misuse of food (viz., taking 8 eggs). *Id.* at 16; *see also* Docket No. 1-1 at 63.

(8) Mr. Ferguson gave Mr. Patkins a bad evaluation dated November 10 – an evaluation that was "suppressed" until after February 21, 2018. Docket No. 1 at 16-17; *see* Docket No. 1-1 at 88.

(9) Upon his return to the north culinary area in about January 2018 (after having been away most of December 2017 and into the beginning of January 2018), Mr. Ferguson caused discord by fraternizing with and influencing other cooks to act against Mr. Patkins. Docket No. 1 at 19-20. The other cooks, for example, hid saran wrap and food products from Mr. Patkins and excluded him from authorized meals among cooks. *Id.* at 20.

(10) On February 2, 2018, Mr. Ferguson moved a preparation table and grabbed a spoon from Mr. Patkins' hand, insisting that he, rather than Mr. Patkins, would decide when the potatoes were ready. *Id.* at 20.

(11) On February 3, 2018, Mr. Ferguson issued a CDC-128B chrono requesting that Mr.

Patkins be removed from his work assignment. *Id.* at 22; Docket No. 1-1 at 90. (On February 21, the classification committee removed Mr. Patkins from his work assignment in culinary. Docket No. 1 at 22.)

(12) On February 5, 2018, Mr. Ferguson searched Mr. Patkins' property, looking for missing aprons, and then threw Mr. Patkins' property to the ground when he was finished. *Id.* at 21.[1]

B. <u>The Inmate Appeals</u>

In many cases, the dispute about exhaustion concerns whether a prisoner received a decision at the highest level for his inmate appeal. Here, however, the dispute is whether Mr. Patkins' several inmate appeals adequately described the particular retaliatory acts to exhaust all the parts of his exhaustion claim. Given the nature of this inquiry, the allegations of each inmate appeal must be recounted in some depth.

Mr. Patkins filed six inmate appeals that pertained to Mr. Ferguson during the relevant time period between October 14, 2017 (i.e., the date on which Mr. Patkins threatened to file a complaint) and approximately February 2018 (i.e., when Mr. Patkins was removed from his kitchen job based on Mr. Ferguson's requests).

<u>Inmate appeal log # CTF-17-03100</u>: In this appeal, Mr. Patkins claimed that the rule violation report (#3535833) issued on October 14, 2017, by Mr. Ferguson for misuse of state property (viz., a large amount of plastic wrap) was retaliatory and "evidentially void." Docket No. 18-1 at 11. The CDCR determined that the second-level decision exhausted administrative remedies for this appeal. *Id.* at 10.

<u>Inmate appeal log # CTF-17-03215</u>: In this appeal, Mr. Patkins claimed that Mr. Ferguson

---

[1] Mr. Patkins also alleges that Mr. Ferguson gave him "evil eye stares." Docket No. 1 at 13, 14, 19. In the prison setting, prisoners routinely are watched and observed by staff members. Given that reality, the allegation that a staff member "stared" at a prisoner, even if he did so with an "evil eye," is simply too trivial to support a retaliation claim. *See Coszalter v. City of Salem*, 320 F.3d 968, 976 (9th Cir. 2003) ("when an employer's response includes only minor acts, such as 'bad-mouthing,' that cannot reasonably be expected to deter protected speech," do not amount to actionable retaliation); *Morman v. Dyer*, 2017 WL 1233329, at *4 (N. D. Cal. 2017) (finding that plaintiff failed to state a retaliation claim because "[t]he allegedly adverse action—staring at and telling the inmate he was ugly—was so insignificant that it 'cannot reasonably be expected to deter protected speech.'").

3

engaged in "retaliation by infliction of a false" rule violation report (#3697021) for misuse of food (viz., taking 8 eggs) on November 10, 2017, following Mr. Patkins' October 14 threat to file a grievance. *Id.* at 24. In the description of the problem, Mr. Patkins wrote that he had complained to supervising cooks for the "personal searching to stop – looking into the bathroom and personal searches did stop. But CSC staff Hall on 11-11-17 with CSC F[erguson] raided my work area giving me threatening evil eye scowls when finding nothing – CSC F[erguson] still hovers, searching all my trails." *Id.* at 26. This appeal was denied at the Director's level. *Id.* at 22.

Inmate appeal log # CTF-17-03535: In this appeal, Mr. Patkins claimed that the hearing officer who held the hearing on the misuse-of-food rule violation report had denied him his due process rights to staff assistance and to present evidence in his defense. *Id.* at 49, 51. Mr. Patkins argued that Mr. Ferguson had wrongly labelled him a thief. *Id.* at 51. The CDCR determined that the second-level decision exhausted administrative remedies for this appeal. *Id.* at 48.

Inmate appeal log # CTF-18-00444: In this appeal, Mr. Patkins described his problem as "on-going retaliation" and asked officials to "please tell me when CSC Ferguson is to stop his on-going retaliation, personal attacks, evil eye scowls, antagonism, bullying, and placing me on the worst job assignments in spite of my skill level in culinary?" *Id.* at 85, 87. Mr. Ferguson wrote that, on February 2, 2018, Mr. Ferguson had pushed back a table, grabbed a spoon Mr. Patkins was holding, and angrily said that he (Ferguson) would decide when the potatoes were done. *Id.* at 85, 87. He also wrote that, on February 5, 2018, Mr. Ferguson had accused Mr. Patkins of stealing aprons, searched his property, and then threw the property on the floor. *Id.* at 87. This appeal was denied at the Director's level. *Id.* at 83.

Inmate appeal log # CTF-18-00559: In this appeal, Mr. Patkins complained about "further reprisal for filing a complaint." *Id.* at 100. He complained that a committee had taken his job on February 21, 2018, and did so "to satisfy on-going retaliation" by Mr. Ferguson. *Id.* Mr. Patkins wrote that a February 3, 2018, chrono by Mr. Ferguson relied on unsubstantiated rule violation reports. *Id.* at 102. He complained that the committee had improperly relied on Mr. Ferguson's information and arbitrarily took away his job. *Id.* This appeal was denied at the Director's level. *Id.* at 98.

Inmate appeal log # CTF-18-00627: Mr. Patkins complained of "job removal violating due process by arbitrary action," arguing that his job had been taken away improperly because of the ongoing retaliation by Mr. Ferguson and the false information in the February 3, 2018, memo by Mr. Ferguson asking to drop Mr. Patkins from the culinary job. *Id.* at 118, 120. Mr. Patkins also complained that the committee relied on a two-year job limitation as a pretext to take away his job. *Id.* at 120. This appeal was denied at the Director's level. *Id.* at 116.

### III. VENUE AND JURISDICTION

Venue is proper in the Northern District of California because some of the events or omissions giving rise to the complaint occurred at a prison in Monterey County, which is located within the Northern District. *See* 28 U.S.C. §§ 84, 1391(b). The Court has federal question jurisdiction over this action brought under 42 U.S.C. § 1983. *See* 28 U.S.C. § 1331.

### IV. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

When a defendant moves for judgment against a plaintiff on the merits of his claim. In such a situation, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.

5

When a defendant moves for summary judgment on an affirmative defense on which he bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. *See Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992). The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment. *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). On a motion for summary judgment for nonexhaustion, the defendant has the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172. If the defendant carries that burden, the "burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* The ultimate burden of proof remains with the defendant, however. *Id.* If material facts are disputed, summary judgment should be denied, and the "district judge rather than a jury should determine the facts" on the exhaustion question, *id.* at 1166, "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue," *id.* at 1170-71.

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Mr. Patkins' complaint is made under penalty of perjury and therefore is considered as evidence.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and inferences to be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *See id.* at 631.

## V. DISCUSSION

### A. The Requirement That Inmates Exhaust Administrative Remedies

"No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Ross v. Blake*, 136 S. Ct. 1850, 1856-57 (2016) (mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). All available remedies must be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter,* 534 U.S. at 524. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. *Id.*; *Booth v. Churner*, 532 U.S. 731, 741 (2001). Section 1997e(a) requires "proper exhaustion" of available administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Proper exhaustion requires using all steps of an administrative process and complying with "deadlines and other critical procedural rules." *Id.* at 90. An inmate "need not exhaust *unavailable* [remedies]." *Ross*, 136 S. Ct. at 1858 (emphasis added). An administrative remedy is unavailable if, for example, "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; or if it is "so opaque that it becomes, practically speaking, incapable of use"; or if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60.

The State of California provides its inmates and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). In order to exhaust available administrative remedies within this system, a prisoner must proceed through three formal levels of appeal and receive a decision from the Secretary of the CDCR or his designee. *Id.* § 3084.1(b), § 3084.7(d)(3).

The amount of detail in an administrative grievance necessary to properly exhaust a claim

is determined by the prison's applicable grievance procedures. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) ("To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations"). California prisoners are required to lodge their administrative complaint on a CDCR 602 form (or a CDCR 602-HC form for a health care matter). The level of specificity required in the appeal is described in a regulation:

> (3) The inmate or parolee shall list all staff member(s) involved and *shall describe their involvement in the issue.* To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. . . .
>
> (4) The inmate or parolee *shall state all facts known and available to him/her regarding the issue being appealed* at the time of submitting the [appeal form].

Cal. Code Regs. tit. 15, § 3084.2(a)(3-4) (emphasis added).[2] Another regulation provides that "[a]dministrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included" in the originally submitted CDCR-602 inmate appeal form. Cal. Code Regs. tit. 15, § 3084.1(b).

---

[2] Several Ninth Circuit cases have referred to California prisoners' grievance procedures as not specifying the level of detail necessary and instead requiring only that the grievance "describe the problem and the action requested." *See Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (quoting former Cal. Code Regs. tit. 15, § 3084.2); *Sapp*, 623 F.3d at 824 ("California regulations require only that an inmate 'describe the problem and the action requested.' Cal. Code Regs. tit. 15, § 3084.2(a)"); *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (when prison's procedures do not specify the requisite level of detail, "'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought'"). Those cases are distinguishable, however, because they did not address the regulation as it existed at the time of the events complained of in Mr. Patkins' complaint. Section 3084.2 was amended in 2010 (with the 2010 amendments becoming operative on January 28, 2011), and those amendments included the addition of subsection (a)(3). *See* Cal. Code Regs. tit. 15, § 3084.2 (history notes 11-12 providing operative date of amendment). *Wilkerson* and *Sapp* used the pre-2011 version of section 3084.2, as evidenced by their statements that the regulation required the inmate to "describe the problem and the action requested" – a phrase that does not exist in the version of the regulation in effect in and after 2011. *Griffin* is distinguishable because it discussed the Maricopa County Jail administrative remedies rather than the CDCR's administrative remedies. Whatever the former requirements may have been in the CDCR and whatever requirements may still exist in other non-CDCR facilities, since January 28, 2011, the operative regulation has required California prisoners using the CDCR's inmate appeal system to list the name(s) of the wrongdoer(s) in their administrative appeals and to state all facts known regarding the issue being appealed.

8

B. <u>Mr. Patkins Did Not Exhaust Administrative Remedies For Two Retaliatory Acts</u>

Mr. Ferguson moves for summary judgment on four parts of the retaliation claim on the ground that administrative remedies were not exhausted. Specifically, he contends that Mr. Patkins did not exhaust administrative remedies for his claim that Mr. Ferguson retaliated against him by refusing to return Mr. Patkins' ID after ordering Mr. Patkins to leave culinary; physically blocking Mr. Patkins' access to his work station; enlisting other kitchen staff to inspect Mr. Patkins' work stations; and calling Mr. Patkins a thief. These events correspond to retaliatory acts # 1, # 4, # 5, and # 6 in the above list of retaliatory acts by Mr. Ferguson. Having compared the six inmate appeals with these four retaliatory acts, the Court concludes that Mr. Ferguson is entitled to summary judgment on only two of those retaliatory acts.

1. <u>Retaliatory Acts # 5 and # 6</u>

With regard to retaliatory act # 5 – that Mr. Ferguson enlisted supervisors to ambush and inspect Mr. Patkins' work station -- inmate appeal # CTF-17-03215 touched upon this subject, as it complained about Mr. Ferguson's retaliatory conduct and alleged that "CSC staff Hall on 11-11-17 with CSC F[erguson] raided my work area giving me threatening evil eye scowls when finding nothing." Docket No. 18-1 at 26. It is a close call because the inmate appeal did not specifically allege that Mr. Ferguson had enlisted Mr. Hall to raid the work area (as both could have been operating independently). Nonetheless, the Court concludes that the allegations were adequate to alert prison officials to Mr. Ferguson's involvement in the raids. As the Ninth Circuit has explained, "'[t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.'" *Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016). The inmate appeal sufficed to satisfy the standards of § 3084.2(a) and exhaust administrative remedies for retaliatory act # 5.

With regard to retaliatory act # 6 – that Mr. Ferguson called Mr. Patkins a thief -- several inmate appeals touched upon this subject. Inmate appeal # CTF-17-03535 complained that the disciplinary hearing was unfair, but also urged that Mr. Ferguson had wrongly labelled him a thief; inmate appeal # CTF-18-00444 complained that Mr. Ferguson accused Mr. Patkins of stealing aprons on February 5; and inmate appeal # CTF-18-00627 complained that Mr. Ferguson's

9

February 3 chrono (which, among other things, accused Mr. Patkins of stealing food) was false and retaliatory. These inmate appeals sufficed to exhaust administrative remedies for the claim that Mr. Ferguson retaliated by calling Mr. Patkins a thief, as they listed the alleged wrongdoer and adequately described that person's involvement, as required to exhaust under § 3084.2(a).

In sum, the first-level inmate appeals adequately described retaliatory acts # 5 and # 6 to present those portions of his retaliation claim for consideration to prison officials. Defendant does not dispute that all six of the inmate appeals filed by Mr. Patkins received decisions at the highest level necessary to exhaust administrative remedies for the issues in those appeals. For these reasons, the Court denies Defendant's motion for summary judgment as to retaliatory acts # 5 and # 6.

2. Retaliatory Acts # 1 and # 4

Mr. Patkins did not mention retaliatory act # 1 – that Mr. Ferguson refused to give Mr. Patkins his ID back after telling him to "leave culinary" on October 14 -- in any of the first-level inmate appeals he filed. And Mr. Patkins did not mention retaliatory act # 4 -- that Mr. Ferguson blocked Mr. Patkins' access to do his job functions on October 20 – in any of the first-level inmate appeals he filed.

Mr. Patkins appears to take the position that an inmate appeal that mentions retaliation in general suffices to exhaust all acts of retaliation, and that an inmate appeal that mentions one act of retaliation suffices to exhaust other, unmentioned acts of retaliation. The Court disagrees. The details of wrongful conduct matter; it is necessary for the inmate to describe those details to exhaust administrative remedies for claims pertaining to those wrongs. This very point is evident in *Kimbro v. Miranda*, 735 F. App'x 275, 279 (9th Cir. 2018), where the Ninth Circuit determined that inmate appeals alleging wrongs on several dates did not suffice to exhaust administrative remedies for a wrong on an unmentioned date. *Id. Kimbro* affirmed the dismissal of a claim "against Clark for denial of medication on September 9, 2008, based on a failure to exhaust. Though Kimbro advances a 'continuing violation' theory to argue that other grievances alleging denials of medication are sufficient to exhaust the September 9, 2008 denial of medication, those grievances do not discuss the September 9, 2008, denial. Thus, they were insufficient to put

10

prison officials on notice of the denial of medication on September 9, 2008, to allow them 'to take appropriate responsive measures' to correct [the] problem." *Id.*

*Griffin v. Arpaio*, 557 F.3d 1117 (9th Cir. 2009) also is instructive. There, the inmate filed a grievance stating that he had fallen trying to access his upper bunk and requested a ladder or step to reach the bunk. *Id.* at 1118. The inmate obtained an order for a lower-bunk assignment from a prison nurse while his grievance was pending; thereafter, the inmate continued in his inmate appeals to demand a ladder and prison officials replied to the appeals by stating that the nurse's order resolved the problem. *Id.* at 1118-19. The inmate then filed a civil rights complaint alleging, among other things, that prison officials disregarded the nurse's order. The Ninth Circuit concluded that the inmate had not exhausted this claim because his inmate appeals did not mention the alleged disregard of the nurse's order. *Id.* 1121.

Another instructive case is *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010), where the plaintiff filed inmate appeals about medical treatment for an eye condition and then filed a civil rights complaint alleging that prison officials (a) denied him medical treatment for his eye condition, (b) denied a review of his medical records, and (c) improperly screened out grievances seeking medical care. The Ninth Circuit determined that the plaintiff had not exhausted administrative remedies for claims about the review of his medical records and the improper screening of grievances about medical care because the inmate appeals only alerted prison officials to the nature of his complaint regarding medical treatment for his eye condition. *Id. See also McCollum v. California Dep't of Corr. and Rehab.*, 647 F.3d 870, 876 (9th Cir. 2011) (inmate appeals asserting that "prison policies fail to provide for certain general Wiccan religious needs and free exercise" did not "provide notice that the source of the perceived problem is the absence of a paid Wiccan chaplaincy" and therefore did not exhaust remedies for challenge to the chaplaincy hiring program itself).

Under the reasoning of these cases, Mr. Patkins' inmate appeals that mentioned retaliation generally and some specific acts of retaliation did not suffice to exhaust administrative remedies for other specific acts of retaliation that were not mentioned in the inmate appeals. Mr. Ferguson has carried his burden to demonstrate that Mr. Patkins did not exhaust the available administrative

11

remedies as to his claim that Mr. Ferguson committed retaliatory acts # 1 and # 4. The undisputed evidence shows that California provides an administrative remedies system for California prisoners to complain about their conditions of confinement, and that Mr. Patkins used that California inmate appeal system to complain about some events that gave rise to his complaint. The regulation requires that the prisoner provide the name of the wrongdoing official and to state all facts known about the issue being appealed. Cal. Code Regs. tit. 15, § 3084.2(a)(3-4). The undisputed evidence shows that the several inmate appeals Mr. Patkins filed pertaining to events alleged in the complaint that received a final decision did not mention that Mr. Ferguson engaged in retaliatory act # 1 or retaliatory act # 4. Mr. Ferguson thus met his initial burden to prove "that there was an available administrative remedy, and that [the plaintiff] did not exhaust that available remedy." *Albino*, 747 F.3d at 1172.

Once Mr. Ferguson met his initial burden, the burden shifted to Mr. Patkins to come forward with evidence showing that something in his particular case made the existing administrative remedies "effectively unavailable to him." *Id.* Mr. Patkins fails to make the requisite showing.

Mr. Patkins offers up several reasons why his failure to identify retaliatory acts # 1 and # 4 should be excused or otherwise didn't matter, but none are persuasive. He first urges that it is "ridiculous" and "arbitrary" to require an inmate to appeal every act of harassment separately. Docket No. 21 at 2. He argues that, if he had to appeal every act, he would have had to file about four to five appeals on October 14 alone, which would have exceeded the allowable number of inmate appeals for a given time period. *Id.* Docket No. 21 at 2. He also suggests that, due to space limitations, he would not have been able to list all the retaliatory acts in a single appeal. *See id.* at 8.

This group of arguments fails to persuade the Court. An inmate wanting to file an inmate appeal about several acts of retaliation could simply list all the acts of retaliation. The inmate appeal form, with the continuation page that Mr. Patkins used, allows the inmate 22 lines to describe the problem at the first level. That provides sufficient room for an inmate to explain his issue (including the various specific acts that show the violation of his rights), especially if the

inmate avoids repetition, legal citations, and hyperbole. In fact, Mr. Patkins' inmate appeals show that he could and did enumerate multiple specific ways in which he believed he was wronged – and did so in a single inmate appeal form. For example, inmate appeal # CTF-17-3215 mentioned the rule violation report for taking 8 eggs, plus the searches, plus the raiding of his work space.

Mr. Patkins also urges that, because some retaliatory acts were identified at some point along the way in the inmate appeal process, they were exhausted even though they were not mentioned in the *first*-level inmate appeal. *Id.* at 9. For example, he mentioned retaliatory act # 1 (the failure to return the ID) in the portion of the form that required him to describe why he was dissatisfied with the *second*-level response to his inmate appeal, *see* Docket No. 18-1 at 14, after not mentioning that event in the first-level inmate appeal that discussed the rule violation report for misuse of state property. This argument is not persuasive because the regulations plainly prohibit adding new issues, information, and wrongdoers beyond those identified in the original inmate appeal form. *See* Cal. Code Regs. tit. 15, § 3084.1(b) ("Administrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602"). Nothing in prison officials' response to the inmate appeal suggests they chose to excuse the fact that he had not included that issue in his first-level inmate appeal. In the example Mr. Patkins provides, the second-level response addressed only the rule violation report for misuse of state property and did not mention the failure to return the ID. Docket No. 18-1 at 18-19. And there was no Director's-level decision, other than a letter informing Mr. Patkins that the second-level decision sufficed to exhaust the administrative remedy for the appeal. *Id.* at 10.

Next, Mr. Patkins appears to argue that his inmate appeals sufficed to present *all* of the retaliatory acts because the appeals were not screened out or cancelled, even when he presented "a deeper level of detail" as he moved beyond the first-level inmate appeal. Docket No. 21 at 6. This argument fails because, as explained in the preceding paragraph, the regulation plainly prohibited adding new issues and information beyond those described in the first-level inmate appeal. To the extent he faults prison officials for not faulting him for not listing all the retaliatory acts, his argument fails. Prison officials did not choose to ignore a problem of which they had not been

13

made aware. *Cf Reyes v. Smith*, 810 F.3d 654, 658 (9th Cir. 2016) (exhaustion occurred where "prison officials ignore[d] the procedural problem and render[ed] a decision on the merits of the grievance").[3]

Mr. Patkins failed to properly exhaust his administrative remedies for the portions of his retaliation claim that allege that Mr. Ferguson refused to return Mr. Patkins' ID after making him leave the culinary area and physically blocked Mr. Patkins' access to a work station. *See Ngo*, 548 U.S. at 90-91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.").

Bearing in mind that Mr. Ferguson has the ultimate burden of proof on the defense and viewing the evidence in the light most favorable to Mr. Patkins, the court concludes that Mr. Ferguson is entitled to judgment as a matter of law on the affirmative defense that Mr. Patkins failed to exhaust administrative remedies for retaliatory acts # 1 and # 4 in his § 1983 claim against Mr. Ferguson.

When there is an exhaustion problem that affects part, but not all, of a complaint, the Court need not dismiss the entire complaint. *Jones v. Bock*, 549 U.S. 199, 222-24 (2007) (rejecting "total exhaustion-dismissal" rule); *Lira v. Herrera*, 427 F.3d 1164, 1170 (9th Cir. 2005). Rather than requiring Mr. Patkins to file an amended complaint, it is easier to simply dismiss the unexhausted portion of the retaliation claim. The unexhausted part of the complaint may simply be dismissed where, as here, the unexhausted part is not so intertwined with the exhausted part

---

[3] In *Reyes*, the California prisoner whose health care appeal concerning inadequate pain management failed to identify two prison doctors – and thus failed to meet the specificity requirements of the CDCR's regulation -- nevertheless exhausted his claim of deliberate indifference to serious medical needs against the two doctor defendants because the appeal was decided on its merits at all levels of review. *See id.* at 656-57. But this does not mean that a claim decided on the merits necessarily exhausts as to all possible defendants. There must be a sufficient connection between the claim in the appeal and the unidentified defendant(s) to provide prison officials with "notice of the alleged deprivation" and an "opportunity to resolve it." *Id.* at 659. In *Reyes*, the two unidentified prison doctors had a sufficient connection with plaintiff's claim in the appeal concerning inadequate pain management because prison officials plainly knew that the two unidentified prison doctors served on the pain management committee that had determined that plaintiff should not receive narcotic pain medication. *See id.* By contrast, Mr. Patkins' inmate appeals identifying several specific retaliatory acts by Mr. Ferguson would not have alerted prison officials to other retaliatory acts by Mr. Ferguson.

14

that it is difficult to untangle them. *Lira*, 427 F.3d at 1175-76. Accordingly, the allegations that Mr. Ferguson engaged in retaliatory act # 1 and retaliatory act # 4 will be dismissed without prejudice to Mr. Patkins filing a new action alleging them if he ever properly exhausts administrative remedies for them. Those two retaliatory acts will no longer form a part of the retaliation claim in this action.

## VI. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**. Docket No. 18. Specifically, the motion is granted as to retaliatory acts # 1 and # 4, and denied in all other respects. The allegation that Mr. Ferguson engaged in retaliatory act # 1 – that Mr. Ferguson refused to give Mr. Patkins his ID back after telling him to "leave culinary" on October 14 (as alleged at Docket No. 1 at 11) – is **DISMISSED** without prejudice. The allegation that Mr. Ferguson engaged in retaliatory act # 4 -- that, on October 20, 2017, Mr. Ferguson blocked Mr. Patkins' access to do his job functions (as alleged at Docket No. 1 at 13) – is **DISMISSED** without prejudice.

Having resolved Defendants' motion for summary judgment on the administrative exhaustion issue, the case needs to move forward. The Court now sets the following schedule for a motion for summary judgment on the merits of the case. Defendant must file and serve his motion for summary judgment, or a notice that he does not intend to file such a motion, no later than **April 24, 2020**. Defendant is reminded to serve a new *Rand* notice when he files his motion for summary judgment. Plaintiff must file and serve his opposition to the motion for summary judgment no later than **May 22, 2020**. Defendant must file and serve his reply, if any, no later than **June 5, 2020**.

**IT IS SO ORDERED**.

Dated: February 28, 2020

_____
EDWARD M. CHEN
United States District Judge

15